IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JASON R. DODD,

                Plaintiff,                      OPINION AND ORDER

v.

                                                        20-cv-913-wmc

DR. SALAM SYED,
DR. O'BRIEN and H. FRANK, RN,

                Defendants.

Currently incarcerated at the Green Bay Correctional Institution, *pro se* plaintiff Jason Dodd filed this lawsuit under 42 U.S.C. § 1983 concerning past events while incarcerated at Columbia Correctional Institution ("Columbia"). Specifically, Dodd claims that four, Columbia employees acted with deliberate indifference in failing to treat his hand injury and associated pain. Now before the court is defendants' motion for judgment on the pleadings on the ground that Dodd released his claims in this lawsuit as part of a more global settlement agreement with the State of Wisconsin. (Dkt. #26.) Because there is no reasonable dispute that the release covered Dodd's claims in this lawsuit, defendants are entitled to judgment in their favor.

FACTS

In *Dodd v. Dittman*, No. 17-cv-569-wmc, also before this court, plaintiff signed a Mutual Release and Settlement Agreement ("Agreement") on September 18, 2020. Immediately above his signature, states, "This release and settlement agreement has been read and understood by the undersigned before signing." (Dkt. #23-1, at 5.) Paragraph 3 of the agreement also states unambiguously that Dodd released all claims against the State

of Wisconsin, the Department of Corrections and all of its employees, for any action or inaction that occurred before the date the agreement was fully executed. Finally, in paragraph 4, Dodd promises not to sue the State, DOC or any DOC employee for any action or inaction that occurred before the date the agreement was fully executed, although the agreement did reserve Dodd's right to challenge any *future* acts of the State or DOC employees. In consideration for those waivers, Dodd was paid $13,000 from the State.

The court received Dodd's complaint initiating this lawsuit on October 1, 2020, just about two weeks after the Agreement was executed, despite the events giving rise to his claims taking place between June of 2018 and May of 2019.

OPINION

Release of a claim is an affirmative defense. *United States v. Rogers Cartage Co.*, 794 F.3d 854, 860 (7th Cir. 2015). "Under Wisconsin law, when the language of a settlement agreement is clear on its face, a court must assume that the language represents the parties' intent and must apply it as written." *Oliver v. Jess*, No. 20-C-1069, 2021 WL 2533508, at *2 (E.D. Wis. June 21, 2021).[1] When the language of a contract is plain and unambiguous, courts apply the literal meaning of that language. *Dietrich v. Trek Bicycle Corp.*, 297 F. Supp. 2d 1122, 1126 (W.D. Wis. 2003) (citing *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 23, 233 Wis. 2d 314, 607 N.W.2d 276 (2000)).

Understandably enough, defendants seek judgment on their affirmative defense because: his claims in this lawsuit arise from events that took place well before he signed

---

[1] The court construes the settlement agreement under Wisconsin contract law. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000).

the settlement agreement and release on September 18, 2020; and the release, therefore, explicitly bars those claims. In opposition, Dodd first argues that the release language is ambiguous, justifying the court to look behind the language for evidence of the parties' intent. In support, he says that because the Agreement only referenced the '569 case, the release could not have covered this lawsuit. However, the language of the release is unambiguous to the contrary; it contains *no* carve-outs and the Seventh Circuit has concluded that a general release of claims, including "any and all" language, is unambiguous and unequivocal. *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 568 (7th Cir. 1995) (citations omitted).

Dodd also argues that the contract was not fully executed because the DOC deducted certain amounts from his settlement proceeds to pay certain of Dodd's debt obligations -- such as outstanding restitution, court fees and DNA surcharges. However, at most, this is a challenge to the manner in which the defendants fulfilled the terms of the Agreement, but does not render his release and waiver of claims invalid, especially where there is no dispute as to the State's substantial compliance with the Agreement. In any event the Agreement's term pertaining to the monetary payment to Dodd stated only that the State would "pay the amount of #13,000 to Jason R. Dodd within 30 days after th[e] Agreement [was] fully executed by check to Plaintiff's institution," with *no* provision requiring the defendants, the State or the DOC to discharge any debts or to exclude the $13,000 from garnishment for those debts. (Dkt. #23-1, ¶ 1.)

To that point, Dodd stretches even further by arguing that the State made a false misrepresentation by failing to disclose his debts. However, the elements of fraud are a

3

false representation made with intent to defraud and reliance by the injured party on the misrepresentation. *See Batt v. Sweeney*, 2002 WI App 119, ¶ 13, 254 Wis. 2d 721, 647 N.W.2d 868 (citing *Ritchie v. Clappier*, 109 Wis. 2d 399, 404, 326 N.W.2d 131 (Ct. App. 1982)). Here, Dodd has submitted no evidence that any representative of the State made a false statement to him with the intent to defraud him. At most, Dodd attests that the AAG negotiating with him failed to discuss the possibility that his debts would be deducted from his $13,000, arguing that that the State somehow had a duty to disclose to him his own personal debts. The only authority for this dubious position is a decision that stands for the proposition that a property holder must disclose latent defects of the property that is the subject of the sale. *See Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 288 N.W.2d 95 (1980). However, the disclosure obligations owned by a seller in a real estate transaction are not at all analogous to the State's claimed duty to inform Dodd of his own debts. Even if some duty existed, moreover, it was *Dodd*, not the State or the AAG, that was in the best position to know about his ongoing debt obligations. Dodd does not even suggest that he was unaware of his debts. As important, Dodd has not shown that the AAG negotiating the terms of the settlement agreement was aware that Dodd had outstanding debts, much less that Dodd asked the AAG whether the cash payment might the subject to garnishment or deductions and was somehow mislead.

Similarly, Dodd cites a decision from this court, *Talley v. Hoffman*, No. 14-cv-783-jdp, 2022 WL 767048, at *3 (W.D. Wis. Mar. 14, 2022), finding issues of fact as to whether an agreement was the product of fraud or mistake. In *Talley*, however, the plaintiff had already filed a lawsuit that was the subject of the release. In contrast, here, Dodd had

4

not filed the pending lawsuit when he negotiated with the AAG and executed a release agreement. *Id.* at *2.

Finally, the *Talley* plaintiff submitted evidence related to multiple negotiations with different AAGs sufficient to suggest that: (1) there was some confusion about which claims the plaintiff intended to release; and (2) whether a second existing lawsuit was in fact covered by the release. *Id.* at *2-*3. However, none of that evidence was even made part of the record here, nor is it relevant given the unambiguous language in the release agreement. Accordingly, defendants are entitled to judgment on the pleadings that Dodd released his claims in this lawsuit.

## ORDER

IT IS ORDERED that:

1. Defendants' motion for judgment on the pleadings (dkt. #26) is GRANTED, and plaintiff Jason Dodd's claims in this lawsuit are DISMISSED with prejudice on the ground of release.

2. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 25th day of October, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge